NOT DESIGNATED FOR PUBLICATION

No. 118,793

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KRISTAL GASKILL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Opinion filed February 1, 2019. Affirmed.

*Sam S. Kepfield*, of Hutchinson, for appellant.

*Boyd K. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., MALONE and LEBEN, JJ.

PER CURIAM: Kristal Gaskill appeals her convictions of two misdemeanor counts of violating a protection order. Gaskill contends that there was insufficient evidence to support her convictions. Finding that there was sufficient evidence to support Gaskill's convictions, we affirm.

On April 27, 2017, at about 6:23 p.m., Sedgwick County Sheriff's Deputy Joshua Collins responded to a domestic disturbance call and saw "a pile that appeared to be items for a baby stacked up partially on the roadway, partially on the grass," in front of the

1

home of Heather Ford (Heather); her adult son, Ryan Montano (Montano); and her minor child, Rachel Ford (Rachel). Montano, Heather, and Rachel told Collins that they had just returned from court, where a permanent protection from stalking order had been issued on behalf of Rachel and a permanent protection from abuse order had been issued on behalf of Montano, protecting them from being contacted by Kristal Gaskill, Montano's ex-girlfriend and the mother of his child. Gaskill was present at the hearing when the orders were granted.

Shortly after Heather, Rachel, and Montano had returned home from the courthouse, they saw the items now piled outside being thrown from a Dodge Durango parked in front of their home. Heather, Rachel, and Montano all identified Gaskill as the person driving the Durango. They gave Collins a description and the license plate number of the Durango, and when Collins ran the license, it returned to Jacob Gaskill.

On August 7, 2017, the State charged Gaskill with one count of violating a protection from abuse order and one count of violating a protection from stalking order. Her jury trial began on December 11, 2017. Montano testified that shortly after they returned home from the courthouse on April 27, 2017, he looked out his bedroom window and saw a Dodge Durango that he recognized as belonging to Gaskill and having belonged to Gaskill's brother in the past. Montano testified that he saw Gaskill in the driver's seat. He testified that an individual in the passenger's seat—whom Montano did not know—"started throwing things in the ditch in front of [Montano's] house." The items thrown included a baby car seat, stuffed animals, clothes and boots belonging to Montano, and pictures of his family.

Montano went into the living room and told the rest of his family what he had seen. Heather testified that she looked out the window and saw Gaskill, whom she immediately recognized, sitting in the driver's seat of the Durango. Heather also testified that she saw at least one other unknown person in the vehicle, and she saw items that

2

belonged to Montano and his daughter "being thrown out of the vehicle in a hurry." Rachel testified similarly that she could also see into the Durango, and she saw Gaskill in the driver's seat of the car. Heather called 911.

Gaskill presented testimony from her mother, Kelley Gaskill, who stated that she had been at court with Gaskill on April 27, 2017, and after they left the courthouse, they returned to Kelley's home, where they stayed all evening. Gaskill's brother, Nicholas Gaskill, who lived with Kelley, testified that he remembered Gaskill coming over to watch movies after her court date. Gaskill also testified in her own defense. She stated that she had gone to court on April 27, 2017, and received final orders of protection related to Montano and Rachel. She also testified that she left court with Kelley, in Kelley's car, and went to Kelley's home, where she stayed for the rest of the evening. Gaskill denied driving her Durango to Montano, Heather, and Rachel's home on the day in question. After hearing the evidence, the jury convicted Gaskill on both counts.

On December 19, 2017, the district court denied Gaskill's motion for a new trial and motion for judgment of acquittal. The district court sentenced Gaskill to 12 months in the Sedgwick County Adult Detention Facility on each count, to run concurrently, and placed her on 12 months' probation. Gaskill timely appealed.

Gaskill's sole argument to this court is that there was insufficient evidence to support her convictions. Specifically, Gaskill argues that "certain inconsistencies" in the State's evidence rendered that evidence unreliable. For example, Gaskill notes that Montano, Rachel, and Heather testified that items were "thrown" out of the Durango, but the photograph taken of the items and admitted into evidence at trial showed the items "stacked in the yard, not strewn about." Gaskill also points out that Collins testified that he never contacted Gaskill and never saw the Durango, and that Montano, Heather, and Rachel were not consistent in their testimony about whether each saw people other than

3

Gaskill in the Durango. Thus, Gaskill contends, the evidence presented "was not proof beyond a reasonable doubt" and this court should reverse her convictions.

> "'When the sufficiency of the evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' 'Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citations omitted.]" *State v. Lloyd*, 308 Kan. 735, 741, 423 P.3d 517 (2018).

Gaskill's argument fails because it asks this court to do just that: reweigh the evidence, find the defense witnesses more credible, and resolve evidentiary conflicts in her favor. This we cannot do.

K.S.A. 2017 Supp. 21-5924(a) states: "Violation of a protective order is knowingly violating: (1) A protection from abuse order issued pursuant to K.S.A. 60-3105, 60-3106, or 60-3107, and amendments thereto; . . . or (6) a protection from stalking or sexual assault order issued pursuant to K.S.A. 60-31a05 or 60-31a06, and amendments thereto."

At trial, in addition to testimony from Montano, Heather, Rachel, and Collins, the State introduced into evidence State's Exhibit 3, the temporary order for protection from stalking made permanent on April 27, 2017. That order prohibited Gaskill from contacting Rachel, explicitly stating: "'The defendant shall not enter or come on or around the premise, the residence, or workplace where the protected person resides, stays, or works.'" The State also introduced at trial State's Exhibit 1, the temporary order for protection from abuse made permanent on April 27, 2017. That order prohibited Gaskill from contacting Montano, and it contained the same language.

4

Also at trial, Gaskill conceded that she was aware of both orders as of April 27, 2017, and she "knew if [she] went to where [Montano] and Rachel were living and then contacted [*sic*] th[e] premises, [she] would be in violation of [those] order[s]." Montano, Heather, and Rachel all testified that on April 27, 2017, Gaskill came to the residence of Montano and Rachel. Thus, considered in the light most favorable to the State, there was sufficient evidence for a rational fact-finder to find Gaskill guilty beyond a reasonable doubt of two counts of violating protective orders.

Affirmed.